Dain Smoland (SBN 14328)
Taylor Goldstein (SBN 18940)
SMOLAND LAW
422 North 300 West
Salt Lake City, UT 84103
T:  801-980-3625
F:  385-200-2341
E: dain@smolandlaw.com

*Attorneys for Plaintiff Andrew William Houlin*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION**

| | |
|---|---|
| ANDREW HOULIN, an individual,<br><br>Plaintiff,<br><br>Utah Highway Patrol Trooper J. FORSEY, in his individual capacity;<br><br>Defendant. | **COMPLAINT AND JURY DEMAND (VIOLATION OF CIVIL RIGHTS)**<br><br>Civil No. 2:24-CV-293<br><br>Magistrate Judge Daphne Oberg |

Plaintiff Andrew Houlin, by and through his undersigned counsel of record, hereby complains of Defendant, Utah Highway Patrol J. Forsey, and alleges as follows:

**PARTIES**

1. Plaintiff Andrew Houlin ("Houlin") is a resident of Millcreek, Utah.

2. Defendant Utah Highway Patrol Trooper J. Forsey ("Forsey") is believed to be a resident of Salt Lake County, Utah, and at all times applicable to this action was acting under the authority of the State of Utah, Utah Department of Public Safety, as a

Utah Highway Patrol Trooper.

## JURISDICTION AND VENUE

3. This action arises under the Fourth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. § 1983. Accordingly, the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

4. The claims made in this Complaint occurred and arose in Salt Lake County, State of Utah. Accordingly, venue is proper under 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

### I. Houlin is Pulled Over for an Innocuous Traffic Violation

5. In the late evening of June 24, 2023, Forsey was on patrol in a marked Utah Highway Patrol Vehicle.

6. He spotted a black GMC Sierra traveling north on State Street in Murray, Utah, and initiated a traffic stop of it.

7. The vehicle was driven by Houlin, who was on his way from Rio Tinto Stadium, where he had attended a Real Salt Lake (soccer team) game with his friends.

8. The only purported reason for the traffic stop was Forsey's contention that the vehicle was in violation of Utah Code §41-6a-601, commonly referred to as "Speeding."

9. Forsey alleged a speed of 52mph in a 40mph zone, a speed not uncommon on State Street, which is a wide multi-lane thoroughfare lined by businesses.

10. No other traffic or equipment violations were alleged by Forsey.

11. According to the National Highway Traffic Safety Administration

2

("NHTSA") DWI Detection and Standardized Field Sobriety Testing Participant Manual ("NHTSA Manual"), travelling in excess of the posted speed limit is not recognized as a cue of drug or alcohol impairment that can be observed while a vehicle is in motion.

12. When Forsey engaged his overhead lights to initiate the traffic stop, Houlin responded promptly and appropriately to the signal to stop.

13. Houlin used his turn signal and stopped in a parking lot off the right side of the roadway.

14. There was nothing observed by the Forsey during the "stopping sequence" of Houlin's vehicle that was a cue of impaired driving.

15. Nothing was observed by the Trooper that was direct evidence that Mr. Houlin was not safe to operate the vehicle.

**II.    Forsey Performs Tests and Makes Roadside Observations**

16. Forsey claimed that Houlin's eyes were glassy and blood shot.

17. Forsey claimed that he could smell the odor of alcohol coming from Houlin's mouth.

18. Forsey noted that Houlin's speech was normal.

19. Upon questioning, Houlin told Forsey that he had consumed "a couple beers" before the game, and one during the game, but nothing since.

20. According to "The Drinking Driver" a Utah Highway Patrol publication used for DUI enforcement training, the self-report from Mr. Houlin about his alcohol consumption would indicate that he was below the per se limit in Utah of .05.

21. Prior to the administration of Standardized Field Sobriety Tests ("SFSTs"),

Houlin told Forsey that he has bad knees.

22. Forsey administered the Horizontal Gaze Nystagmus test and reported seeing 4 out of 6 clues on that test.

23. Forsey administered the Walk and Turn test and reported seeing 3 out of 8 clues on that test.

24. Forsey gave improper instructions for the Walk and Turn test and inaccurately counted clues against Houlin.

25. Forsey administered the One Leg Stand test and reported seeing 3 out of 4 clues on that test.

26. Forsey gave improper instructions for the One Leg Stand test and inaccurately counted clues against Houlin.

### III. Forsey Arrests Houlin and Houlin Takes a Breath Test Which Shows He Is Well Under the Legal Limit for Alcohol

27. Forsey arrested Houlin for Driving Under the Influence of Alcohol, a violation of Utah Code § 41-6a-502.

28. Forsey had the GMC vehicle impounded.

29. Forsey transported Houlin to the Utah Highway Patrol Section Office in Murray, Utah.

30. At the Section Office, pursuant to Utah's "Implied Consent" law, Forsey requested that Houlin take a breath test to measure the ethanol content of his breath on penalty of a lengthy driver's license suspension.

31. Houlin capitulated to participate in a breath test to measure the ethanol content of his breath.

32. Forsey conducted the test on an Intoxilyzer 8000 machine.

33. The result of the breath test was 0.026 grams of ethanol per 210 liters of breath.

34. The legal limit in Utah for breath alcohol in the body is 0.05 grams of ethanol per 210 liters of breath. Houlin's breath-ethanol result was therefore approximately one-half of the legal limit in Utah.

35. Forsey had no reason to suspect that Houlin was under the influence of any other substance, including any drug.

**IV. Instead of Releasing Houlin, Forsey Books Houlin, Submits Him to a Blood Draw, and Swears Out a Probable Cause Affidavit that Omits the Exculpating Information**

36. Upon learning that the results of the test showed he was under the legal "per se" limit, Houlin asked Forsey if he would be released.

37. Forsey denied Houlin's request to be released and instead instructed Houlin that he would be taking a blood sample from him as well, contrary to his prior request for a breath test only.

38. Houlin submitted to an intravenous blood draw.

39. Forsey then booked Houlin into the Salt Lake County Jail, where he spent approximately 9 hours.

40. Forsey drafted an Affidavit of Probable Cause attempting to justify his warrantless arrest, and subsequent booking of Mr. Houlin into the Salt Lake County Jail, to be submitted to a Utah judge or magistrate for review.

41. Forsey signed the affidavit, declaring under penalty of perjury that it was

true and correct.

42. Forsey omitted from the affidavit any mention that Houlin had voluntarily submitted to a formal, admissible breath analysis which showed that he was well under the legal limit for alcohol in his breath.

43. Relying on Forsey's sworn representations, the honorable magistrate Paul Thompson signed an order to hold Houlin with bail.

44. To Houlin's knowledge and belief, Forsey never submitted his blood sample to the state laboratory, contrary to common practice and procedure.

45. An Informal Adjudicative Proceeding was held by the Drivers License Division pursuant to the Utah Administrative Procedures Act and §53-3-223 Utah Code Annotated.

46. Testimony was given by Forsey at this hearing and other evidence was submitted, including the Intoxilyzer results and documentary evidence that the breath testing device (Intoxilyzer) was operating in accordance with 41-6a-515 U.C.A.

47. Factual findings were rendered and conclusions of law. Based on the hearing, the Utah Driver's License Division declined to take any action against Houlin's license.

48. A DUI charge was filed against Houlin in Murray City Justice Court, but, at the pretrial conference, the Murray City Prosecutor dismissed Houlin's DUI charge, citing "evidentiary issues."

### V. Damages Suffered by Houlin

49. Houlin incurred expenses and hardships that would not have occurred but

for the wrongful arrest and continued detention.  This includes, but is not limited to, the pain of an unnecessary blood draw performed after his breath test showed he was well under the legal limit for alcohol; the embarrassment and lost time associated with the arrest and detention itself, as well as the subsequent court hearings; and the attorney's fees for representing him at the DLD license hearing and in the criminal matter.

50. Further, Houlin is a licensed attorney and was, at the time of his arrest, actively seeking employment in other states, which requires extensive background checks both in the licensing context and the employment context. Because State bars (and legal employment in general) often require the disclosure of arrests and charges as well as convictions, this wrongful arrest, detention, and charge for DUI will necessitate repeated review and could result in negative consequences.  For instance, Houlin was in the process of applying for a clerkship with a judge in Florida, and an interview was being set up through a mutual acquaintance. However, after Houlin disclosed the fact of this arrest, the acquaintance rescinded her recommendation of him and the interview was cancelled. Further, this arrest may well cause difficulties with the renewal of Houlin's "Global Entry" pass, which is up for renew shortly. Because Houlin has family in Argentina and travels there 3-4 times per year, Global Entry approval is important to him. In short, this charge will likely have significant and long-lasting effects on Houlin's professional and personal life.

**FIRST CAUSE OF ACTION**
**UNLAWFUL EXTENSION OF DETENTION IN VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

51. Houlin incorporates by reference all preceding paragraphs in this Complaint as if fully set forth below.

52. Defendant Forsey is a "person" falling within 42 U.S.C. § 1983.

53. Forsey, while acting under color of law, initiated a simple, routine traffic stop.

54. Even if the initial detention and investigation for DUI was justified at its inception, any reasonable suspicion or probable cause for that detention dissipated either at the time that Houlin performed field sobriety tests or at the time that Houlin voluntarily submitted to a formal, admissible breath test and the result showed that he was well under the legal limit for alcohol in his breath.

55. This extended traffic stop and arrest violated clearly established Fourth Amendment law, and as a direct and proximate result of the constitutional violation, Houlin has incurred general and specific damages, in an amount to be proven at trial.

56. Pursuant to 42 U.S.C. § 1988, Houlin is entitled to attorneys' fees upon successful prosecution of this lawsuit.

**SECOND CAUSE OF ACTION**
**FALSE ARREST IN VIOLATION OF 42 U.S.C. § 1983 AND THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

57. Houlin incorporates by reference all preceding paragraphs in this Complaint as if fully set forth below.

58. Defendant Forsey is a "person" falling within 42 U.S.C. § 1983.

59. After Houlin performed field sobriety tests, the facts and circumstances known to Forsey at that time, viewed objectively, did not justify an arrest for DUI.

60. Additionally, after Houlin's breath test conclusively showed that he was under the limit for breath alcohol content, the facts and circumstances known to Forsey at that time, viewed objectively, did not support an arrest for DUI.

61. Forsey submitted an Affidavit of Probable Cause which knowingly omitted the exculpatory information of Houlin's breath test.

62. The magistrate relied upon Forsey's sworn affidavit when signing the order to hold Houlin with bail.

63. Forsey arrested and booked Houlin while acting under color of law, without a warrant, consent, or probable cause.

64. The wrongful arrest, without constitutional justification, violated Harris's rights guaranteed under the Fourth Amendment to the United States Constitution.

65. The evidence deduced in the criminal/administrative proceedings related hereto conclusively show that Houlin was not intoxicated at the time of detention and arrest.

66. As a direct and proximate result of Forsey's actions and/or omissions, Houlin has suffered emotional damage and other general damages, along with specific damages including lost wages, unnecessary expenses incurred in hiring a criminal defense lawyer, and other related damages, in an amount to be proven at trial.

67. Additionally, pursuant to 42 U.S.C. § 1988, Houlin is entitled to attorneys'

fees upon successful prosecution of this lawsuit.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Andrew Houlin prays for judgment as against Defendant J. Forsey as follows:

1. For special damages in an amount to be determined at trial;

2. For general damages in an amount to be determined at trial;

3. For pre- and post-judgment interest on all special damages pursuant to Utah law;

4. For costs and attorneys' fees to the extent allowed by law; and

5. For such and further relief as the Court deems just and proper.


DATED this 23rd day of April, 2024

SMOLAND LAW

 /s/ Dain Smoland
Dain Smoland

*Attorney for Plaintiff Andrew Houlin*


Plaintiff's Address:

Andrew Houlin
*c/o* SMOLAND LAW
422 N 300 W
Salt Lake City UT 84103