UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| ANDREW HOULIN, an individual,<br><br>      Plaintiff,<br><br>v.<br><br>Utah Highway Patrol Trooper JONATHAN FORSEY, in his individual capacity,<br><br>      Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (DOC. NO. 10)**<br><br>Case No. 2:24-cv-00293<br><br>Magistrate Judge Daphne A. Oberg |

Andrew Houlin filed this action against Utah Highway Patrol Trooper Jonathan Forsey, bringing Fourth Amendment claims under 42 U.S.C. § 1983 for unlawful extension of detention and false arrest.[1]  Mr. Houlin's claims relate to a traffic stop where Trooper Forsey ultimately arrested Mr. Houlin for driving under the influence.[2]  Trooper Forsey has filed a motion to dismiss, asserting he is entitled to qualified immunity because Mr. Houlin fails to allege a violation of clearly established law.[3]  Mr. Houlin opposes Trooper Forsey's motion.[4]  Because Mr. Houlin fails to allege a violation

---

[1] (*See* Compl. ¶¶ 51–67, Doc. No. 2.)

[2] (*See id.* ¶¶ 5–50.)

[3] (*See* Mot. to Dismiss ("Mot."), Doc. No. 10.)  After a hearing on the motion, the court took the matter under advisement.  (*See* Min. Entry, Doc. No. 17.)

[4] (*See* Pl.'s Resp. to Def.'s Mot. to Dismiss ("Opp'n"), Doc. No. 12.)

of a clearly established right, Trooper Forsey's motion is granted and Mr. Houlin's case is dismissed.[5]

## BACKGROUND

Mr. Houlin's allegations are as follows.  In June 2023, Trooper Forsey stopped Mr. Houlin for speeding, accusing him of driving fifty-two miles per hour in a forty mile-per-hour zone.[6]  At the time, Mr. Houlin was returning home from a Real Salt Lake soccer game.[7]  During the stop, Trooper Forsey saw Mr. Houlin's eyes were glassy and bloodshot, and smelled "the odor of alcohol from his mouth."[8]  "Upon questioning, [Mr.] Houlin told [Trooper] Forsey that he had consumed 'a couple beers' before the game, and one during the game, but nothing since."[9]

Trooper Forsey then administered three field sobriety tests—the horizontal gaze nystagmus test, the walk and turn test, and the one-leg stand test.[10]  Trooper Forsey reported that Mr. Houlin failed all three tests,[11] but Mr. Houlin alleges Trooper Forsey

---

[5] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c), Rule 73 of the Federal Rules of Civil Procedure, and Rule 72-3(a) of the Local Rules of Civil Practice.  (*See* Doc. No. 9.)

[6] (Compl. ¶¶ 5–10, Doc. No. 2.)

[7] (*Id.* ¶ 7.)

[8] (*Id.* ¶¶ 16–17.)  Mr. Houlin argues he "does not concede" Trooper Forsey "*actually* observed" these (and other) indicia of impairment; he merely acknowledges Trooper Forsey "*claimed* to observe" these facts.  (*See* Opp'n 1–3, Doc. No. 12.)  But where Mr. Houlin's allegations do not call these observations into question, this is a distinction without a difference.

[9] (Compl. ¶ 19, Doc. No. 2.)

[10] (*Id.* ¶¶ 22–23, 25.)

[11] (*See id.*)

"gave improper instructions" and "inaccurately counted clues" as to the walk and turn

test and the one-leg stand test.[12]  Mr. Houlin does not challenge Trooper Forsey's

administration of the horizontal gaze nystagmus test.

After the field sobriety tests, Trooper Forsey arrested Mr. Houlin for driving under

the influence ("DUI").[13]  At the police station, Trooper Forsey gave Mr. Houlin a breath

test, which showed an alcohol concentration of 0.026%—roughly half the 0.05% limit for

per se DUI in Utah.[14]  As a result of the test, Mr. Houlin asked to be released.[15]

Trooper Forsey declined this request and obtained a blood sample from Mr. Houlin

(which Mr. Houlin alleges was never submitted to the laboratory).[16]  Trooper Forsey

"then booked [Mr.] Houlin into the Salt Lake County Jail, where he spent approximately

9 hours."[17]

Trooper Forsey then drafted an affidavit of probable cause to support the

arrest.[18]  But Mr. Houlin asserts the trooper "omitted from the affidavit any mention that

[Mr.] Houlin had voluntarily submitted to a formal, admissible breath analysis which

---

[12] (*See id.* ¶¶ 24, 26.)

[13] (*Id.* ¶ 27); *see also* Utah Code § 41-6a-502(1) (providing that an actor commits DUI by operating a vehicle "under the influence of alcohol, any drug, or the combined influence of alcohol and any drug to a degree that renders the actor incapable of safely operating a vehicle; or [with] a blood or breath alcohol concentration of .05 grams or greater").

[14] (*See* Compl. ¶¶ 30–34, Doc. No. 2); *see also* Utah Code § 41-6a-502(1)(a).

[15] (*See id.* ¶ 36.)

[16] (*See id.* ¶¶ 36–38.)

[17] (*Id.* ¶ 39.)

[18] (*Id.* ¶ 40.)

showed that he was well under the legal limit for alcohol in his breath."[19]  Mr. Houlin

asserts that in reliance on the affidavit, a Utah judge ordered Mr. Houlin held, but set a

bail amount.[20]

At an informal adjudicative proceeding later held by the Utah Driver's License

Division, the Division "declined to take any action against [Mr.] Houlin's license."[21]  And

at a pretrial conference in a criminal proceeding, a Murray City prosecutor dismissed the

DUI charge against Mr. Houlin, "citing 'evidentiary issues.'"[22]  Mr. Houlin ultimately

pleaded guilty to a speeding charge, and his plea was held in abeyance.[23]

Based on these factual assertions, Mr. Houlin brings two claims under § 1983,

alleging violations of the Fourth Amendment.[24]  First, Mr. Houlin brings a claim for

"unlawful extension of detention," alleging the "extended traffic stop and arrest violated

clearly established Fourth Amendment law":[25]

> Even if the initial detention and investigation for DUI was justified at its
> inception, any reasonable [suspicion] or probable cause for that detention
> dissipated either at the time that [Mr.] Houlin performed field sobriety tests
> or at the time that [Mr.] Houlin voluntarily submitted to a formal, admissible

---

[19] (*Id.* ¶ 42.)

[20] (*Id.* ¶¶ 40–41, 43.)

[21] (*Id.* ¶¶ 45–47.)

[22] (*Id.* ¶ 48.)

[23] (*See* Ex. 3 to Mot., Plea in Abeyance, Doc. No. 10-3); *see also Stack v. McCotter*, 79 F. App'x 383, 391 (10th Cir. 2003) (unpublished) (noting federal courts may take judicial notice of related state court filings).

[24] (*See* Compl. ¶¶ 51–67, Doc. No. 2); *see also* 42 U.S.C. § 1983 (providing a cause of action against state officials for violations of federally protected rights).

[25] (Compl. ¶ 55, Doc. No. 2.)

breath test and the result showed that he was well under the legal limit for alcohol in his breath.[26]

Second, Mr. Houlin brings a claim for "false arrest," alleging Trooper Forsey "arrested and booked" Mr. Houlin without probable cause:[27]

> After [Mr.] Houlin performed field sobriety tests, the facts and circumstances known to [Trooper] Forsey at that time, viewed objectively, did not justify an arrest for DUI. Additionally, after [Mr.] Houlin's breath test conclusively showed that he was under the limit for breath alcohol content, the facts and circumstances known to [Trooper] Forsey at that time, viewed objectively, did not support an arrest for DUI.[28]

In his second cause of action, Mr. Houlin also alleges Trooper Forsey "knowingly omitted the exculpatory information of [Mr.] Houlin's breath test" in his probable cause affidavit.[29]

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Trooper Forsey moves to dismiss Mr. Houlin's claims.[30] The trooper asserts qualified immunity, arguing his observations provided reasonable suspicion to extend the traffic stop and probable cause to arrest Mr. Houlin for speeding and DUI.[31] Trooper Forsey also contends he had no clearly established duty to release Mr. Houlin after the breath test or to include the breath test result in his probable cause affidavit.[32]

---

[26] (*Id.* ¶ 54.)

[27] (*Id.* ¶ 63.)

[28] (*Id.* ¶¶ 59–60.)

[29] (*Id.* ¶¶ 61–62.)

[30] (*See* Mot. 35, Doc. No. 10.)

[31] (*See id.* at 15–25, 32–35.)

[32] (*See id.* at 25–32.)

**LEGAL STANDARDS**

To avoid dismissal under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face."[33]  The court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor.[34] But the court need not accept a plaintiff's conclusory allegations as true[35]—"a plaintiff must offer specific factual allegations to support each claim."[36]

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[37]  When an official asserts qualified immunity in a motion to dismiss, the court evaluates "(1) whether the facts that a plaintiff has alleged make out a violation of constitutional right, and (2) whether the right at issue was clearly established."[38]  If the plaintiff's claim fails on either prong, qualified immunity protects the defendant from suit.[39]

---

[33] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[34] *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

[35] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[36] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (citing *Twombly*, 550 U.S. at 555).

[37] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[38] *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (internal quotation marks omitted) (quoting *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011)).

[39] *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"[40]  This requires "a Supreme Court or Tenth Circuit decision on point," or a "clearly established weight of authority from other courts."[41]  A case directly on point is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate."[42]

## ANALYSIS

Although the complaint identifies two "causes of action," Mr. Houlin appears to assert several theories of Fourth Amendment violations.  First, Mr. Houlin alleges Trooper Forsey lacked reasonable suspicion to extend the traffic stop to investigate him for DUI.[43]  Next, Mr. Houlin alleges Trooper Forsey lacked probable cause to arrest him for DUI.[44]  Mr. Houlin further alleges that any probable cause necessarily "dissipated either at the time that [Mr.] Houlin performed field sobriety tests" or after the breath test showed an alcohol concentration below the limit for per se DUI.[45]  Finally, Mr. Houlin alleges Trooper Forsey violated the Fourth Amendment by omitting the breath test result from his post-arrest probable cause affidavit.[46]  Each of these claims fail.

---

[40] *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

[41] *Brown*, 662 F.3d at 1164.

[42] *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

[43] (*See* Compl. ¶¶ 54–55, Doc. No. 2.)

[44] (*See id.*)

[45] (*See id.* ¶ 54.)

[46] (*See id.* ¶¶ 61–64.)

I.  Trooper Forsey's observations

As an initial matter, Mr. Houlin takes issue with Trooper Forsey's characterization of his roadside observations.[47]  In his complaint, Mr. Houlin alleges Trooper Forsey "claimed that [Mr.] Houlin's eyes were glassy and blood shot" and "claimed that he could smell the odor of alcohol coming from [Mr.] Houlin's mouth."[48]  As to the three field sobriety tests, Mr. Houlin acknowledges Trooper Forsey "reported" seeing failure clues.[49]  While Mr. Houlin contends Trooper Forsey improperly administered two of the three sobriety tests,[50] he does not allege (or offer facts suggesting) the remainder of Trooper Forsey's reported or claimed observations were incorrect, false, or otherwise improper.

In his motion to dismiss, Trooper Forsey accepts as true Mr. Houlin's allegation that he improperly administered two of the sobriety tests.[51]  As to the remaining observations—glassy and bloodshot eyes, alcohol odor, and failure of the horizontal gaze nystagmus test—Trooper Forsey proceeds on the premise that these observations are accurate (likely because the complaint provides no basis to challenge them and no

---

[47] (*See* Opp'n 2–3, Doc. No. 12.)

[48] (*See* Compl. ¶¶ 16–17, Doc. No. 2 (section entitled "Forsey Performs Tests and Makes Roadside Observations").)

[49] (*See id.* ¶¶ 22–23, 25.)

[50] (*See id.* ¶¶ 24, 26 (alleging, without more, that Trooper Forsey "gave improper instructions" and "inaccurately counted clues" as to the walk and turn test and the one leg stand test).)

[51] (*See* Mot. 24–25, Doc. No. 10 (arguing Trooper Forsey had probable cause to arrest Mr. Houlin because "even if two tests were improperly administered, [Mr.] Houlin still failed the HGN test and he makes no allegation that this test was improperly administered or explained").)

alternative factual assertions).[52]  In his opposition brief, Mr. Houlin argues Trooper

Forsey improperly presumes the accuracy of these remaining observations, because

Mr. Houlin "does not concede any of those facts."[53]  In other words, Mr. Houlin contends

Trooper Forsey "inappropriately tweaks the facts to suit his argument" by treating Mr.

Houlin's allegations of "claimed" or "reported" observations as "admissions of what

[Trooper Forsey] *actually* observed."[54]

        The distinction Mr. Houlin makes is inconsequential.  It is true that at the motion

to dismiss stage, Mr. Houlin's well-pleaded factual allegations are accepted as true and

all reasonable inferences are drawn in his favor.  But even accepting, for purposes of

this analysis, Mr. Houlin's allegation that Trooper Forsey improperly administered two of

the sobriety tests,[55]  Mr. Houlin does not assert the trooper's remaining observations

were incorrect, impossible, falsely reported, or otherwise improper.  And the complaint

contains no assertions of fact from which such inferences may be reasonably drawn.

An allegation that Trooper Forsey "reported" or "claimed" to make these observations is

not equivalent to well-pleaded factual allegations that the observations were

inaccurate.[56]  Accepting the allegations in the complaint as true (and drawing

---

[52] (*See id.*)

[53] (*See* Opp'n 2–3, 7, Doc. No. 12.)

[54] (*Id.* at 2–3.)

[55] (*See* Compl. ¶¶ 24, 26, Doc. No. 2.)

[56] (*See id.* ¶¶ 16–17, 22.)  Indeed, absent a claim of inaccuracy, the words "reported" or "claimed" are redundant—because an observation is a claim to have seen something. *See, e.g., Observation*, Dictionary.com, https://www.dictionary.com/browse/observation [https://perma.cc/C6R2-PTJ7] (defining "observation" as "an act or instance of noticing or perceiving," or "a remark, comment, or statement based on what one has noticed or

reasonable inferences from them) requires the court to accept Trooper Forsey's roadside observations as recited in the complaint.

Relatedly, Mr. Houlin argues Trooper Forsey's qualified immunity defense requires the court to "weigh evidence and find facts," which is improper at the motion to dismiss stage.[57] This argument appears to rest on Mr. Houlin's contention that he did not "plead or concede[]" Trooper Forsey "*actually*" made the observations described in the complaint.[58] But where Mr. Houlin did not challenge the observations, the court has no alternative assertions of fact to accept as true—and must accept Trooper Forsey's observations as recited in the complaint.

At the hearing on the motion to dismiss, Mr. Houlin argued claims of qualified immunity should not be addressed at this stage. To the extent Mr. Houlin contends the question of qualified immunity is premature,[59] he does not square this argument with the

---

observed"). The section of the complaint containing these allegations is entitled "Forsey Performs Tests and Makes Roadside Observations." (*See* Compl. 3, Doc. No. 2.) And where Mr. Houlin expressly disputes the accuracy of two field sobriety tests—but does not dispute the third test or the other observations—the complaint cannot reasonably be read as asserting the remaining observations were false.

[57] (*See* Opp'n 8–10, Doc. No. 12.)

[58] (*See id.* at 9 (contending Trooper Forsey's arguments "all rest on his self-serving interpretation of what the Complaint stated," but "this is not what Mr. Houlin's complaint plead[ed] or conceded").)

[59] (*See id.* at 8–9 ("[E]ven though Trooper Forsey claims that Mr. Houlin 'has not met his burden' of showing that the constitutional 'right was clearly established' to defeat qualified immunity, the fact is that a § 1983 plaintiff like Mr. Houlin 'need not plead that the right violated is clearly established.'").) Mr. Houlin relies on *Currier v. Doran*, 242 F.3d 905 (10th Cir. 2001), in support of this argument. In *Currier*, the court assessed the merits of a qualified immunity claim in filings the district court properly construed as a motion to dismiss. *Id.* at 911. While the court rejected a previous heightened pleading standard in qualified immunity cases (which required plaintiffs to include all factual allegations necessary to conclude the defendant violated clear established law),

well-settled practice of resolving qualified immunity "at the earliest possible stage in litigation."[60]  To be sure, asserting qualified immunity in a motion to dismiss "subjects the defendant to a more challenging standard of review than would apply on summary judgment," because the court must accept the plaintiff's allegations as true.[61]  But even accepting Mr. Houlin's well-pleaded allegations as true and drawing all reasonable inferences in his favor, Mr. Houlin fails to assert a clearly established violation of federal law.

## II. Reasonable suspicion to extend the stop

Mr. Houlin first claims Trooper Forsey lacked reasonable suspicion to extend the traffic stop to investigate him for DUI.[62]  Because a traffic stop is a seizure within the meaning of the Fourth Amendment, it must be "justified at its inception and the officer's actions must be reasonably related in scope to the mission of the stop."[63]  To extend a stop, an officer must have reasonable suspicion, which requires a "particularized and

---

*id.* at 912–16, it reaffirmed the requirement for a plaintiff to assert a violation of federal law, *id.* at 917, and to show the law on which he relies was clearly established at the time, *id.* at 923.

[60] *Pearson*, 555 U.S. at 232 (noting the Supreme Court has "repeatedly [] stressed the importance of resolving immunity questions at the earliest possible stage in litigation" (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991))); *see also Keith*, 707 F.3d at 1187 ("Determining whether a complaint sufficiently alleges a clearly established violation of law is an issue of law . . . ." (citing *Iqbal*, 556 U.S. at 674–75)).

[61] *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)).

[62] (*See* Compl. ¶¶ 54–55, Doc. No. 2.)

[63] *United States v. Frazier*, 30 F.4th 1165, 1172–73 (10th Cir. 2022) (internal quotation marks omitted) (quoting *United States v. Cortez*, 965 F.3d 827, 834 (10th Cir. 2020)).

objective basis for suspecting criminal conduct under a totality of the circumstances."[64]
At the hearing, Mr. Houlin's counsel conceded Mr. Houlin's admission to drinking gave
Trooper Forsey reasonable suspicion to extend the stop to conduct field sobriety tests.[65]
Accordingly, Mr. Houlin's unlawful extension of detention claim fails.

   III.  Probable cause to arrest for DUI

        Mr. Houlin next claims Trooper Forsey lacked probable cause to arrest him for
DUI.[66]  "A warrantless arrest is permissible only if an officer has probable cause to
believe that the arrestee committed a crime."[67]  Probable cause exists when facts and
circumstances would lead a reasonable officer to believe the arrestee has committed or
is committing a crime.[68]  "Probable cause is not a high bar."[69]  And where Trooper
Forsey raises qualified immunity, the standard is even lower—he only needs "arguable

---

[64] *Id.* (quoting *United States v. Cortez*, 965 F.3d at 834).

[65] Even if Mr. Houlin had not conceded this argument, the facts alleged in the complaint meet the reasonable suspicion standard—Mr. Houlin was speeding and admitted to drinking, and Trooper Forsey smelled alcohol and noticed he had glassy and bloodshot eyes.

[66] (*See* Compl. ¶¶ 54–55, Doc. No. 2.)

[67] *Rife v. Okla. Dep't of Pub. Safety*, 854 F.3d 637, 645 (10th Cir. 2017) (citing *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007)).

[68] *See id.*

[69] *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (internal quotation marks omitted) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

probable cause."[70]  Trooper Forsey is entitled to qualified immunity if he "*could* have reasonably believed that probable cause existed in light of well-established law."[71]

At the time of Mr. Houlin's DUI arrest, Trooper Forsey had the following indicia Mr. Houlin was under the influence: Mr. Houlin was speeding, he smelled like alcohol and had glassy and bloodshot eyes, he admitted to drinking, and he failed at least one field sobriety test.[72]  These facts establish probable cause for a reasonable officer to believe Mr. Houlin drove under the influence.[73]  Trooper Forsey certainly could have reasonably believed probable cause existed.  Accordingly, Trooper Forsey is entitled to qualified immunity on this claim.

IV. "Dissipation" of probable cause

Next, Mr. Houlin alleges that even if Trooper Forsey had probable cause to arrest him, any probable cause "dissipated either at the time that [Mr.] Houlin performed field sobriety tests" or after the breath test revealed his breath alcohol concentration to be

---

[70] *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012).

[71] *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 879 (10th Cir. 2014) (emphasis in original) (quoting *Fleming v. Livingston Cnty.*, 674 F.3d 874, 880 (7th Cir. 2012)).

[72] (*See* Compl. ¶¶ 9, 16–17, 19, 22, Doc. No. 2.)

[73] *See, e.g.*, *United States v. Chavez*, 660 F.3d 1215, 1224 (10th Cir. 2011) (finding probable cause to arrest for driving while intoxicated based on bloodshot and watery eyes, alcohol odor, admission to having "a couple of beers," and performance on field sobriety tests); *Wilder v. Turner*, 490 F.3d 810, 815 (10th Cir. 2007) (finding probable cause to arrest for DUI where the officer "observed several indicia of [the driver's] alcohol consumption[,] including a moderate odor of alcohol, pinkish and watery eyes, a flushed face, unusually slow and deliberate speech, and slow hand movements," and the driver "refused to participate in a field sobriety test"); *see also Sherbrooke v. City of Pelican Rapids*, 577 F.3d 984, 987–88 (8th Cir. 2009) (finding probable cause to arrest for driving while intoxicated where the officer detected alcohol on the driver's breath, the driver admitted to drinking, and the driver failed one of three field sobriety tests) (cited favorably in *Chavez*, 660 F.3d at 1224–25).

under the limit for per se DUI.[74]  At the outset, Mr. Houlin's claim that the sobriety tests

vitiated probable cause duplicates the argument that the trooper lacked probable cause

to arrest Mr. Houlin for DUI—since the trooper arrested Mr. Houlin after the sobriety

tests.[75]  As to Mr. Houlin's contention that probable cause dissipated after Mr. Houlin

took the breath test, *Titus v. Ahlm*[76] forecloses this theory.  And under *Panagoulakos v.

Yazzie*,[77] officers have no clearly established duty to release lawfully arrested people

even if probable cause is later negated.

      A.   *Titus*

      Under *Titus*, Mr. Houlin's breath test result did not vitiate probable cause.  In

*Titus*, the plaintiff filed suit after an officer stopped him for running a red light.[78]  During

the stop, the officer noticed the plaintiff's "eyes were watery and blood shot and he

smelled of alcohol." [79]  After the plaintiff admitted he had been drinking beer, he

"performed poorly on at least two" field sobriety tests.[80]  The officer then arrested the

plaintiff for driving while intoxicated ("DWI").[81]  At the police station, a breath test

indicated the plaintiff's breath alcohol concentration was well below New Mexico's limit

---

[74] (*See* Compl. ¶ 54, Doc. No. 2.)

[75] *See Wesby*, 583 U.S. at 68 (noting the probable cause decision is made at the time of the arrest).

[76] 297 F. App'x 796 (10th Cir. 2008) (unpublished).

[77] 741 F.3d 1126 (10th Cir. 2013).

[78] 297 F. App'x at 798.

[79] *Id.*

[80] *Id.*

[81] *Id.* at 799.

for per se DWI.[82]  But because the officer still suspected the plaintiff was "under the influence of some substance," he did not release the plaintiff.[83]

The plaintiff filed a § 1983 action, arguing any probable cause to arrest him for DWI, "was vitiated by his breath alcohol test result," and the officer had a duty to release him after the breath test.[84]  Rejecting this argument, the Tenth Circuit found the officer was entitled to qualified immunity because "in New Mexico a person can be charged with DWI for 'driving while impaired to the slightest degree.'"[85]  Accordingly, "[e]ven after [the plaintiff's] breath test result was obtained, a reasonable officer could have believed that probable cause existed."[86]

*Titus* is precisely on point.  As in *Titus*, Trooper Forsey had probable cause to arrest based on Mr. Houlin's speeding, alcohol odor, glassy and bloodshot eyes, admission to drinking, and performance on field sobriety tests.[87]  Like the *Titus* plaintiff, Mr. Houlin contends any probable cause dissipated after a breath test "showed that he

---

[82] *Id.*

[83] *Id.*

[84] *See id.*

[85] *Id.* at 800 (quoting *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1207 (10th Cir. 2008)).

[86] *Id.*

[87] It is immaterial that the *Titus* plaintiff failed "at least two" sobriety tests while Mr. Houlin failed at least one.  *See Sherbrooke*, 577 F.3d at 987–88 (finding probable cause to arrest for DWI where the officer detected alcohol on the driver's breath, the driver admitted to drinking, and the driver failed one of three field sobriety tests administered) (cited favorably in *Chavez*, 660 F.3d at 1224–25).

was well under the legal limit for alcohol in his breath."[88]  And like the New Mexico DWI
statute at issue in *Titus*, Utah's DUI statute prohibits driving "under the influence of
alcohol [or] any drug, or the combined influence of alcohol and any drug to a degree
that renders the actor incapable of safely operating a vehicle."[89]  Here, as in *Titus*, a
reasonable officer could have believed Mr. Houlin was driving under the influence of
alcohol or drugs to a degree that rendered him incapable of safely operating a vehicle—
notwithstanding the breath test result.[90]

Mr. Houlin's attempts to distinguish *Titus* fail.  First, Mr. Houlin argues *Titus*
"begins with the presumption that the Trooper had probable cause for a DUI arrest,"
based on "observation of bloodshot eyes, smell of alcohol, and poor performance on
[field] sobriety tests"—facts "Mr. Houlin does not concede." [91]  But as discussed above,
Mr. Houlin does not allege Trooper Forsey's observations were inaccurate (aside from
two of the sobriety tests).  And without more, the court cannot simply infer inaccuracy.
Accepting Mr. Houlin's allegations as pleaded, the facts underlying probable cause here
and in *Titus* are aligned.

Next, Mr. Houlin argues "*Titus* was decided on summary judgment, a standard
that is significantly higher than the Rule 12(b)(6) standard Trooper Forsey proceeds

---

[88] (*See* Compl. ¶ 54, Doc. No. 2.)

[89] Utah Code § 41-6a-502(1)(b).

[90] Mr. Houlin alleges that after the breath test, Officer Forsey "had no reason to suspect
that Houlin was under the influence of any other substance [than alcohol]."  (Compl.
¶ 35, Doc. No. 2.)  But even accepting this conclusory allegation, Trooper Forsey could
still have suspected Mr. Houlin to be under the influence of alcohol to a degree that he
could not safely drive—based on the trooper's numerous observations.

[91] (*See* Opp'n 7, Doc. No. 12.)

under."[92]  But to overcome qualified immunity, Mr. Houlin must affirmatively identify a case showing his arrest—as alleged in the complaint—violated clearly established law.[93]  *Titus*'s summary judgment in favor of the officer (under nearly identical facts) contravenes such a showing, particularly where Mr. Houlin identifies no cases supporting his position.[94]

Mr. Houlin also contends "*Titus* lacks the aspect of an affidavit for probable cause, or an allegation (like that made here) that the officer knowingly omitted relevant exculpatory information from that affidavit."[95]  But it is unclear how a later-submitted affidavit (even if it omitted material information) affects whether an earlier breath test result vitiated probable cause.  (Mr. Houlin's argument that Trooper Forsey violated the Fourth Amendment by omitting the breath test result from the affidavit is addressed in more depth below.)

Finally, Mr. Houlin argues "*Titus* is contrary to the logic of the *Courtney*[96] decision (both a more recent decision and a published[97] decision) which explains that a § 1983

---

[92] (*See id.* (citing *Thomas*, 765 F.3d at 1194).)

[93] *See Keith*, 707 F.3d at 1188.

[94] Mr. Houlin's citation to *Courtney v. Oklahoma ex rel. Dep't of Pub. Safety*, 722 F.3d 1216 (10th Cir. 2013) is unavailing, as addressed below.

[95] (*See* Opp'n 8, Doc. No. 12.)

[96] *See Courtney*, 722 F.3d at 1223–26 (finding the officer lacked probable cause for a post-traffic-stop arrest for a firearms violation because a "seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission").

[97] *Cf. Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018) (noting an unpublished opinion "provides little support for the notion that the law is clearly established," but "an

claim may still rest on the [F]ourth [A]mendment requirement for officers to have justification for their continued detention of an arrestee."[98]  But in *Courtney*, the officer claimed the extended detention and arrest (for a firearms offense) did not violate the plaintiff's rights because he had probable cause to arrest the plaintiff for the original traffic offense.[99]  The Tenth Circuit rejected this argument, finding officers may not prolong stops past their initial justification without additional reasonable suspicion of illegal activity.[100]  *Courtney* is inapplicable where, as explained above, Trooper Forsey had justification beyond Mr. Houlin's initial traffic violation—Trooper Forsey's numerous observations provided reasonable suspicion to extend the stop and probable cause to arrest Mr. Houlin for DUI.[101]

---

unpublished opinion can be quite relevant in showing that the law was *not* clearly established" (quoting *Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007).).

[98] (*See* Opp'n 8, Doc. No. 12.)

[99] *See Courtney*, 722 F.3d at 1222–23 ("We therefore reject [the officer's] argument that [the plaintiff's] traffic violations obviated the need for additional justification to prolong the stop after the issuance of a warning citation or otherwise excuse [the officer] for arresting [the plaintiff] on another basis without probable cause.").

[100] *Id.* at 1223–24.

[101] *Cf. id.* at 1226 ("[G]iven the facts known to him at the time of the arrest, [the officer] lacked probable cause to arrest [the plaintiff] for possession of a firearm by a convicted felon.").  In distinguishing *Courtney*, Trooper Forsey argues (like the *Courtney* officer) that because he could have arrested Mr. Houlin for speeding, Trooper Forsey necessarily had reasonable suspicion to extend the stop and probable cause to later arrest Mr. Houlin for DUI.  (*See* Reply Mem. in Supp. of Mot. to Dismiss 11, Doc. No. 15 (citing *Atwater v. Lago Vista*, 532 U.S. 318, 322 (2001)).)  This argument need not be addressed, where Trooper Forsey's observations independently provided reasonable suspicion to extend the stop and probable cause to arrest for DUI.

B.    *Panagoulakos*

As *Titus* illustrates, Mr. Houlin's breath test result did not vitiate probable cause. But even if it had, *Panagoulakos* shows Mr. Houlin had no clearly established constitutional right to be released after the breath test.  In *Panagoulakos*, a plaintiff sued after an officer stopped him for having an illegible registration tag.[102]  During the stop, the plaintiff volunteered that he had a firearm in the vehicle.[103]  The officer searched the plaintiff's name in a criminal database, which revealed the plaintiff was subject to a protective order.[104]  Incorrectly believing all protective orders prohibit firearm possession, the officer arrested the plaintiff—despite his insistence that his protective order expressly permitted him to carry a firearm.[105]  At the police station, the officer reviewed the protective order and found no exception permitting the plaintiff to possess a firearm—but overlooked the fact he was not classified as an "intimate partner" in the order.[106]  (Under the governing statute, the plaintiff would only have been prohibited from possessing firearms if classified as an "intimate partner.")[107]

The plaintiff filed a § 1983 action, arguing the officer's review of the protective order negated her probable cause where the plaintiff was not prohibited from

---

[102] *Panagoulakos*, 741 F.3d at 1127.

[103] *Id.*

[104] *Id.* at 1127–28.

[105] *Id.* at 1128.

[106] *Id.*

[107] *Id.* (citing 18 U.S.C. § 922(g)).

possessing a firearm.[108]  The Tenth Circuit held that even if the officer's review of the order negated probable cause, she was entitled to qualified immunity because no clearly established law imposed a duty to release the plaintiff.[109]  The court noted that the First Circuit has recognized a duty to release "if the arresting officer ascertains beyond a reasonable doubt" that the probable cause is unfounded—but concluded that standard did not help the plaintiff.[110]  Additionally, as the court observed, "[t]he majority of courts have never imposed such a duty," and the Tenth Circuit has never adopted the First Circuit's rule in a published opinion.[111]  Accordingly, under *Panagoulakos*, Trooper Forsey had no clearly established duty to release Mr. Houlin—even if Mr. Houlin's breath test result had negated probable cause.

Mr. Houlin does not address *Panagoulakos* in his opposition brief, his attempts to distinguish *Titus* fail, and he identifies no case demonstrating Trooper Forsey's actions violated clearly established law.  As a result, Trooper Forsey is entitled to qualified immunity as to Mr. Houlin's claim that probable cause dissipated after his breath test.

V.  <u>Omission from probable cause affidavit</u>

Finally, Mr. Houlin alleges Trooper Forsey violated the Fourth Amendment by omitting his breath test result from the post-arrest probable cause affidavit.[112]  No doubt, it can be a Fourth Amendment violation to knowingly or recklessly omit *material*

---

[108] *Id.* at 1130.

[109] *See id.* at 1131.

[110] *Id.* at 1130–31 (citing *Thompson v. Olson*, 798 F.2d 552, 556 (1st Cir. 1986)).

[111] *See id*.

[112] (*See* Compl. ¶¶ 61–64, Doc. No. 2.)

information from a probable cause affidavit.[113]  But an omission is material only when, "if included, [it] would have vitiated probable cause."[114]  Where Mr. Houlin's breath test result did not vitiate probable cause, Trooper Forsey's omission of the result from the post-arrest affidavit was not a constitutional violation.

Mr. Houlin cites *Long v. Boucher*,[115] a case from this district, in support of his claim to the contrary.[116]  In *Long*, the plaintiff alleged a detective violated the Fourth Amendment by omitting material facts from a probable cause affidavit submitted in support of a search warrant.[117]  In the warrant application, the detective sought a DNA sample from the plaintiff to determine whether it matched DNA from an unsolved assault case.[118]  In his affidavit, the detective noted the plaintiff's resemblance to a sketch of the perpetrator, hostility between the victim and the plaintiff, and the plaintiff's refusal to voluntarily provide a DNA sample.[119]  But the detective failed to note that the plaintiff had provided significant evidence in support of an alibi and that the detective had

---

[113] *See Stewart v. Donges*, 915 F.2d 572, 582–83 (10th Cir. 1990) ("[I]t [is] a clearly established violation of plaintiff's Fourth and Fourteenth Amendment rights to knowingly or recklessly omit from an arrest affidavit information which, if included, would have vitiated probable cause.").

[114] *See id*. at 582 n.13 ("Whether the omitted statement was material is determined by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause . . . .").

[115] 706 F. Supp. 3d 1329 (D. Utah 2020).

[116] (*See* Opp'n 10, Doc. No. 12.)

[117] *Long*, 706 F. Supp. 3d at 1335.

[118] *Id*. at 1334.

[119] *See id*.

subpoenas pending which might corroborate or disprove the alibi.[120]  A judge signed the

warrant, and the detective obtained a DNA sample from the plaintiff which did not

match.[121]  The companies the detective subpoenaed later provided information

confirming the plaintiff's alibi.[122]

The plaintiff brought a § 1983 action, alleging the detective violated the Fourth

Amendment by knowingly or recklessly omitting material facts from the warrant

affidavit.[123]  The detective moved to dismiss, arguing the affidavit would still support

probable cause even if the omissions were included.[124]  The court denied the

detective's motion, concluding that "whether an affidavit that included the omitted facts

would establish probable cause is a close enough question that it cannot be resolved as

a matter of law at this stage of the proceedings."[125]  Because the substantial omissions

created a "relatively close question" as to whether probable cause would still exist, the

court found dismissal improper.[126]

In this case, unlike in *Long*, probable cause is not a close question.  The Tenth

Circuit determined as much in *Titus*, a case with nearly identical facts.  Under *Titus*, Mr.

Houlin's post-arrest breath test result neither vitiated probable cause nor made it a close

---

[120] *Id.* at 1334–35.

[121] *Id.* at 1335.

[122] *Id.*

[123] *Id.* at 1333.

[124] *See id.* at 1336.

[125] *Id.* at 1336–37.

[126] *See id.* at 1338.

question.[127]   Accordingly, Trooper Forsey cannot be said to have omitted material information from the post-arrest affidavit.  Mr. Houlin fails to allege a constitutional violation as to Trooper Forsey's omission of his breath test result.[128]

## CONCLUSION

Because Mr. Houlin fails to allege a violation of any clearly established federal law or constitutional right, Trooper Forsey is entitled to qualified immunity.  Trooper Forsey's motion to dismiss[129] is granted, and Mr. Houlin's complaint is dismissed without prejudice.[130]

DATED this 4th day of March, 2025.

BY THE COURT:

*Daphne A. Oberg*

Daphne A. Oberg
United States Magistrate Judge

---

[127] *See Titus*, 297 F. App'x at 800.

[128] To the extent Mr. Houlin argues courts categorically cannot determine whether the affidavit would still support probable cause at the motion to dismiss stage, (Opp'n 10, Doc. No. 12 (citing *DeLoach v. Bevers*, 922 F.2d 618, 623 (10th Cir. 1990)), he is incorrect.  *See, e.g.*, *N.E.L. v. Gildner*, 780 F. App'x 567, 571–73 (10th Cir. 2019) (unpublished) (affirming district court's conclusion at the motion to dismiss stage that omissions were not material).

[129] (Doc. No. 10.)

[130] Although Trooper Forsey seeks dismissal with prejudice, (*see* Mot. 35, Doc. No. 10), dismissal with prejudice for failure to state a claim is proper only where "granting leave to amend would be futile."  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).  Trooper Forsey has not shown amendment would be futile.